UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. CR 02-220 JMR/FLN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES HULL,<br><br>Defendant. | ) | OPPOSITION OF THE UNITED STATES TO DEFENDANT HULL'S MOTION PURSUANT TO 28 U.S.C. § 2255 |

The defendant, James Hull, was convicted in 2004 of distribution of marijuana and conspiracy to distribute marijuana. He was sentenced to a term of 188 months in prison. The Eighth Circuit affirmed his conviction on appeal. United States v. Hull, 419 F.3d 762, 772 (8th Cir. 2005), cert. denied, 126 S. Ct. 2049 (2006). This petition followed.

FACTS

James Hull was convicted after a jury trial of supplying large amounts of marijuana--up to 500 pounds each time--to Minnesota. E.g., T. 135-38. The jury made an Apprendi finding that the conspiracy involved more than 1,000 kilograms (2,200 pounds) of marijuana.

Hull was caught after two of his co-conspirators were arrested and agreed to cooperate with law enforcement. On May 13, 2002, a man named Brian Weaver, who had been previously arrested on marijuana charges, was cooperating with law enforcement. T. 239. He ordered a load of 484 pounds of marijuana from Daniel Connor.

T. 144-47. Connor delivered the load to Weaver in Minnesota. Id. Connor was then arrested. Id. The 484 pounds of marijuana that Connor had just transported to Minnesota were heat sealed and packaged in several white cardboard cartons, T. 144-45, bearing the lot number 99-20472. T. 246. The marijuana had come from James Hull. T. 144.

After his arrest, Connor confessed and agreed to cooperate against his source of supply, James Hull, whom he knew as "Woody." Connor had been obtaining large loads of marijuana from Hull since 1996. T. 136-38, 149-50. They had worked out a regular routine in which Connor would meet Hull in Golden Gate Park in San Francisco on a Thursday to give Hull the money for the next marijuana shipment. T. 134. Hull charged Connor $450-$500 per pound. T. 139. Connor would obtain the loads of marijuana from Hull the following Sunday in the garage at Hull's sister's house in San Bruno, California, T. 134, then transport the marijuana to Minnesota for re-distribution. T. 133-34, 143. Connor sold the marijuana to the Minnesota co-conspirator, Brian Weaver. T. 131-33.

At the direction of law enforcement, Connor made recorded telephone calls to Hull to set up another shipment of marijuana. T. 150-56, 161-63. Because Connor was in custody at the time of these recorded calls, he had to convince Hull to allow Connor to send his "Uncle," actually an undercover officer, to meet with Hull

in Golden Gate Park and give Hull the cash for the marijuana. T. 162, 247. Hull agreed to this. T. 162. On July 11, 2002, Special Agent Thomas Billings of the Minnesota Bureau of Criminal Apprehension, acting undercover, met with Hull in Golden Gate Park and gave him a backpack containing what was represented to be the $225,000 in cash for the next marijuana shipment. T. 248-51. After Hull accepted the backpack and put it in his vehicle, he was arrested by other officers. T. 251.

Officers then executed search warrants at Hull's sister's home in San Bruno and at Hull's residence in San Francisco. At Hull's residence, in his bedroom, officers found a loaded Desert Eagle 9 mm semi-automatic handgun on the top of a night stand. T. 294. They also found a loaded 25 caliber pistol in the next room. T. 296. A small marijuana growing operation was found in the bathroom with 50 newly planted marijuana plants. T. 297-303.

## ARGUMENT

Hull alleges that his counsel was ineffective for a number of reasons. In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two elements. First, a defendant must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir. 1996), cert. denied, 117 S. Ct. 374 (1996). This element is discussed in Part I.

The second element is that the defendant must show prejudice as a result of counsel's unreasonable representation. Strickland, 466 U.S. at 694. T his element is discussed in Part II.

## I. HULL'S COUNSEL PROVIDED REASONABLE REPRESENTATION

In response to a claim of ineffective counsel, "[j]udicial scrutiny of counsel's performance must be *highly deferential*." Strickland, 466 U.S. at 689 (emphasis added). The Supreme Court in Strickland further noted that there is a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. When reviewing the quality of counsel's assistance, courts must be cautious of construing acts or omissions as unreasonable. Id. at 689 (citing Engle v. Isaac, 456 U.S. 107, 133-34 (1982)). Attorneys must have "wide latitude . . . in making tactical decisions," and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citing United States v. Decoster, 624 F.2d 196, 208 (en banc), cert. denied, 444 U.S. 944 (1979); Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

A. Hull's Counsel was Not Ineffective with Respect to the Jury Instructions

Hull alleges that his counsel was ineffective for failing to object to the conspiracy jury instruction. The facts of this case directly contradict this claim. Hull's counsel extensively argued against the conspiracy jury instruction. T. 382-84, 390-98. Counsel favored instead a venue or multiple-conspiracy instruction based on the fact that the defendant allegedly did not know that the marijuana he provided in California would be sold in Minnesota. T. 392-94. Counsel argued that his proposed Jury Instruction No. 28 should have been given as a theory of the case, stating that Hull did not intend to join in a conspiracy to distribute marijuana in Minnesota and, thus, had not been a part of the conspiracy with which the government was charging him. T. 390-91. Counsel argued that the defendant, if conspiring at all, was only part of an isolated conspiracy within the state of California. T. 392-93.

The District Court correctly rejected Hull's proposed instruction because the government was not required to prove that Hull himself knew that the marijuana he was providing would be transported to, and sold in, Minnesota. United States v. Fahnbulleh, 748 F.2d 473, 477 (8th Cir. 1984); see also United States v. Cordova, 157 F.3d 587, 597 (8th Cir. 1998). Affirming this decision, the Eighth Circuit held on direct appeal that Hull's proposed jury instruction depended upon a "flawed view of

conspiracy law." United States v. Hull, 419 F.3d 762, 769 (8th Cir. 2005). Counsel's lack of success in his jury instruction argument does not render his assistance ineffective, nor does it render his strategy unreasonable.

Hull also claims that his counsel was ineffective in failing to request a buyer-seller jury instruction. In United States v. Montano-Guidino, the Eighth Circuit stated that a buyer-seller jury instruction is not appropriate when there is "evidence of multiple . . . transactions." 309 F.3d 501, 505 (8th Cir. 2002). Additionally, the instruction is inappropriate for a "large, distribution-quantity of drugs." Id. at 505-06 (citing United States v. Wiggins, 104 F.3d 174, 177 (8th Cir. 1997)).

During discussion of jury instructions, defense counsel specifically considered the buyer-seller instruction and stated that he believed it to be "weaker" than his suggested venue or multiple-conspiracy instruction. T. 396. Defense counsel was not unreasonable for failing to request a buyer-seller instruction because no reasonable juror could have found a mere buyer-seller relationship. The evidence showed that Hull had conspired to distribute more than 1,000 kilograms of marijuana and had distributed 484 pounds of marijuana, in counts 1 and 2 respectively. Under the requirements of Montano-Guidino, Hull would not have been entitled to a buyer-seller instruction, even had counsel persisted in such a request.

Furthermore, while Hull claims that there were facts to support a buyer-seller defense theory, his argument is conclusory, stating only that the evidence was "provided by cooperating government witnesses . . . ." Memorandum at 26. Hull fails to describe the specific evidence and facts that support this claim. Counsel's decision to argue venue rather than request a buyer-seller instruction was not an unreasonable strategy under the circumstances of this case.

B. Hull's Counsel was Not Ineffective in His Motion for Acquittal.

Hull next claims that his counsel was ineffective in failing to move for an acquittal after the jury returned its guilty verdict. The Eighth Circuit has ruled, however, that counsel is not ineffective for failing to move for a mistrial or acquittal when the verdict is sufficiently supported by the evidence. United States v. Hood, 593 F.2d 293, 297-98 (8th Cir. 1979).

Defense counsel argued for dismissal at the end of the government's case, based upon improper venue. T. 336. Counsel renewed his motion once both sides had rested and prior to closing arguments. T. 470. It was not unreasonable that he did not move for acquittal or mistrial after the jury verdict, since a reasonable jury *could* believe the evidence presented by the United States. See T. 339 (agreeing that a reasonable jury could find a key United States witness credible). There was no sense in moving

for acquittal or mistrial because, as the court later agreed, the verdict was well-supported by the evidence. S.T. at 29, ln. 13-14.

C. Hull's Counsel was Not Ineffective in Arguing Against the Sentencing Enhancements.

Hull next claims that his counsel was ineffective with respect to the enhancements applied at sentencing. In fact, however, counsel argued extensively against both the firearm and obstruction enhancements.

Hull first argues that his counsel was ineffective in allegedly failing to object to the section 2D1.1(b)(1) firearm enhancement, yet defense counsel argued this point extensively. S.T. at 7-12. In fact, counsel argued the point well enough that the court refused to apply an upward adjustment under section 5K2.6, which would have increased Hull's sentence due to the use or possession of a weapon during the crime--an adjustment that the Presentence Report had categorized as possibly warranted. PSR ¶ 71. Counsel also argued extensively against the firearm enhancement in his sentencing position paper. See Defendant Hull's Position of the Parties with Respect to Sentencing Factors at 6-7. The Court and counsel discussed the issue at length, and the Court determined that the enhancement was warranted. See ST at 8-12, 18-19, 21-22, 24, 26-27. Hull has failed to show that his counsel acted unreasonably in failing to further object to the enhancement.

Hull also argues that his counsel was ineffective in allegedly failing to object to the section 3C1.1 enhancement for obstruction, which was based on Hull's false trial testimony. Again, the facts of this case contradict Hull's claim, since his counsel argued this issue extensively in the presentence pleadings. See Defendant Hull's Position of the Parties with Respect to Sentencing Factors at 4-5, and at sentencing, S.T. at 6, ln. 2-9. Counsel's argument was ultimately unpersuasive, not because he was an ineffective attorney, but rather because the enhancement was warranted on the facts of the case.

D. Hull's Claims of Ineffective Appellate Counsel Are Unsupported and Conclusory.

Finally, Hull claims that his appellate counsel was ineffective in failing to raise the issue that no buyer-seller jury instruction was given at trial. As with Hull's other claims, this too fails the Strickland test.

Appellate counsel is not required to raise every possible issue. See Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998) (citation omitted). Weeding out weaker arguments is an established and acceptable appellate practice. Jones v. Barnes 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal . . . ."). In fact, it is often considered the best practice to emphasize fewer issues on appeal. See id. (noting the

preference to "focus[] on one central issue if possible, or at most on a few key issues*").*

As shown above, the buyer-seller instruction was not warranted. Thus, counsel was not ineffective for failing to raise it on appeal. Further, Hull's claim that his appellate counsel was ineffective for failing to raise this issues is conclusory, as Hull provides no factual basis for why this issue specifically should have been raised on appeal.

## II. EVEN IF HULL'S COUNSEL WAS INEFFECTIVE, HULL WAS NOT PREJUDICED

The second element of an ineffective assistance claim is that the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. Even if Hull's counsel had performed ineffectively, which they did not, Hull was not prejudiced and is, thus, not entitled to any relief.

### A. The Conspiracy Jury Instruction was Fully Warranted.

Even had the trial or appellate counsel been ineffective, the conspiracy jury instruction was correctly given, as there was ample evidence to support the instruction. There are three elements to a conspiracy: (1) an agreement existed between two or more people, (2) "the defendant knew of the conspiracy, and (3) the defendant knowingly joined and participated in the conspiracy." United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004). "Once a

conspiracy is established, only slight evidence is required to connect a defendant to the conspiracy." Hayes, 391 F.3d at 961 (citing United States v. Navarrete-Barron, 192 F.3d 786, 793 (8th Cir. 1999)).

The United States presented evidence through testimony and exhibits which clearly supported the existence of a conspiracy and Hull's involvement within that conspiracy. Mr. Connor, a co-conspirator, testified to the conspiracy's existence and the agreement between himself and Hull that Hull would supply Connor with shipments of marijuana. Mr. Connor's testimony established that Hull knew the purpose of the conspiracy because, according to Connor, Hull actually proposed the arrangement. The amounts of marijuana were, as argued above, far more than mere buyer-seller transactions for personal use.

In addition, the jury was specifically instructed as to the elements of conspiracy, T. 549, including that "merely being present" or "acting the same way" or "associating with others" was not sufficient to prove that such a conspiracy existed. T. 550, ln. 19-22. The "mere presence" instruction further insulated Hull from any harm from the lack of a buyer-seller instruction. See Montano-Guidino, 309 F.3d at 506 (finding that such a "mere presence" instruction further mitigated the refusal of a buyer-seller instruction). Thus, regardless of the arguments expressed

by Hull's counsel, the instruction was proper, and Hull was not prejudiced by the lack of further action by his counsel.

B. Even if Counsel was Ineffective in Failing to Reiterate His Motion for Acquittal After the Jury's Verdict, Hull was Not Prejudiced by This Omission.

As noted above, Hull's counsel was not ineffective for failing to reiterate his motion for acquittal after the jury's verdict, after making such motion at the conclusion of the government's case, T. 336, and when both sides had rested. T. 470. Even if Hull's counsel had been ineffective in failing to repeat his motion, Hull has failed to show that, had such a motion been made again, his conviction would likely have been overturned. See Strickland 466 U.S. at 694. Thus, Hull is not entitled to relief, since he has not met the elements set forth by the Supreme Court in Strickland.

C. The Sentencing Enhancements were Fully Warranted.

Even had Hull's counsel been ineffective, the two sentencing enhancements were correctly applied, as there was ample evidence, to support both enhancements.

1. The Enhancement Under § 2D1.1(b)(1) was Fully Warranted.

The Sentencing Guidelines state that a two-level enhancement is warranted under section 2D1.1(b)(1) for possession of a weapon when a weapon is present and it is not "clearly improbable" that the weapon has a nexus to the drug activity. U.S.S.G. § 2D1.1(b)(1), applic. note 3. In this case, the police recovered two

firearms at Hull's residence. One was located on Hull's night stand and was loaded, with the safety in the "off" position. T. 294. In the adjacent bathroom, fifty marijuana cuttings were growing. T. 297-303. The other firearm was found in an office room nearby. T. 296.

The district court found that it was not "clearly improbable" that the guns were related to the drug activity. The court found that Hull's claim with respect to the guns was "frankly not a believable story." S.T. at 32. The district court's finding that the gun enhancement applied was established at least by a preponderance of the evidence. United States v. Cave, 293 F.3d 1077, 1079 (8th Cir. 2002) (standard of proof for sentencing enhancements is preponderance of the evidence).[1]

Hull argues that the enhancement should not apply because the cuttings were not "plants." This argument is misplaced. Even if the marijuana were only cuttings rather than plants, the enhancement would still apply. See United States v. Perez-Guerrero, 334 F.3d 778, 783 (8th Cir. 2003) (noting that "the weapon enhancement is applicable 'if the gun is found in the same location

[1]Notably, the jury agreed that the firearms were connected to the underlying drug offense. The jury found that both guns were forfeitable, based upon 21 U.S.C. 853(a)(1) and (2). The jury was instructed that the guns were forfeitable if they constituted either (1) proceeds of Hull's drug trafficking or (2) "property the defendant used, in any manner or part, to commit or facilitate the violations [for which he was convicted at trial.]" Special Verdict form at 3. The United States presented only a facilitation theory.

where *drugs or drug paraphernalia were stored, or where part of the conspiracy took place*'" (emphasis added) (quoting United States v. Braggs, 317 F.3d 901, 904 (8th Cir. 2003)); see also United States v. Betz, 82 F.3d 205, 211 (8th Cir. 1996) (upholding the enhancement where guns were found away from the main cache of drugs but "they were found on premises from which [the defendant] conducted drug-related activities" and "they were loaded . . . suggesting more than a run-of-the-mill state of readiness for immediate use"). Such a distinction between plants and cuttings is only relevant for purposes of a drug quantity enhancement (which was not sought in this case), as the text of section 2D1.1(b)(1) in no way specifies that the enhancement is applicable only to "plants." Additionally, Hull's argument that he was not the owner of the guns is irrelevant. The enhancement is based upon possession, not ownership. Perez-Guerrero, 334 F.3d at 783. Possession of the guns has not been disputed in this case.

2. The Enhancement Under § 3C1.1 was Fully Warranted.

While defendants should not fear testifying in their own defense, defendants are not allowed to commit perjury. See, e.g., United States v. Willis, 997 F.2d 407, 417 (8th Cir. 1993) (affirming a lower court's application of an obstruction enhancement based upon defendant's perjury in trial); United States v. Johnson, 962 F.2d 1308, 1313 (8th Cir. 1992) (affirming a district court's imposition of an obstruction enhancement for the

defendant's "blatantly untruthful" testimony). Appellate courts should give great deference to the sentencing judge. United States v. Miller, 943 F.2d 858, 860 (8th Cir. 1991) (cited in Johnson, 962 F.2d at 1313). Additionally, "[p]articulars for sentencing purposes need only be proved by a preponderance of the evidence." Johnson, 962 F.2d at 1313 (quoting United States v. Payne, 940 F.2d 286, 292 (8th Cir. 1991)).

In applying the section 3C1.1 enhancement for obstruction, the court found that Hull "told [the jury] lies designed to cause them to be confused and make a wrong decision." S.T. at 20, ln. 23-25. The finding was based on Hull's false testimony that he was buying small amounts of marijuana from Connor rather than selling Connor large amounts. Even if Hull's counsel was ineffective in failing to further object to the obstruction enhancement, the enhancement was warranted. Thus, Hull was not prejudiced by any lack of further objection.

III. HULL WAS NOT PREJUDICED BY ANY ALLEGED BOOKER ERROR

Finally, Hull alleges that his trial counsel was ineffective for failing to predict the Supreme Court's ultimate decision in United States v. Booker, 543 U.S. 220 (2005), and to make sentencing arguments in conformity with it. At the time of Hull's sentencing, the Supreme Court had decided Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that the offense statutory maximum is the maximum sentence a judge may impose based solely on the

facts reflected in the jury verdict or admitted by the defendant. At trial, the jury made an Apprendi finding that the conspiracy involved more than 1,000 kilograms (2,200 pounds) of marijuana. This triggered a statutory maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(A). Hull's sentence of 188 months was well within that statutory maximum.

While Hull's appeal was pending, the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), which held that it is unconstitutional for a judge to enhance a defendant's guideline range based on judge-found rather than jury-found facts. The Supreme Court held that the remedy is to treat the sentencing guidelines as advisory rather than mandatory.

Hull's claim that he was prejudiced by being sentenced under a mandatory guidelines regime rather than an advisory guidelines regime was considered and rejected on direct appeal. The Eighth Circuit held that Hull had failed to bear the burden of demonstrating "a reasonable probability that he would have received a more favorable sentence with the Booker error eliminated by making the Guidelines advisory." Hull, 419 F.3d at 771. Since this issue has already been resolved against Hull on direct appeal, he may not relitigate it in the context of a section 2255 petition. English v. United States, 998 F.2d 609, 612-13 (1993); Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993). Even if he could, the Eighth Circuit's analysis conclusively establishes that

Hull's sentence would not have been different had trial counsel presaged the Booker holding. Thus, counsel was not constitutionally ineffective.

CONCLUSION

For the foregoing reasons, Hull's section 2255 petition should be denied.[2]

Dated: July 10, 2007

Respectfully submitted,

RACHEL K. PAULOSE
United States Attorney

*s/Jeffrey S. Paulsen*

BY: JEFFREY S. PAULSEN
Assistant United States Attorney
Attorney ID Number 144332

[2]The United States gratefully acknowledges the assistance of law clerk Kirsten Arnold in the preparation of this response.